KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
John E. Jureller, Jr.
Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Counsel to the Petitioners*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CANTERBURY SECURITIES, LTD.,[1] | ) | Chapter 15 |
| | ) | |
| | ) | Case No. |
| Debtor in a Foreign Proceeding. | ) | |

**PETITIONERS' DECLARATION AND MOTION FOR (I) RECOGNITION OF**
**FOREIGN MAIN PROCEEDING AND (II) RELATED RELIEF**

---

[1] The Debtor in this chapter 15 case, along with the last four digits of the Debtor's Cayman Island Registration Number, is: Canterbury Securities, Ltd. (in Official Liquidation) (5657). The location of the Debtor's service address for the purpose of this chapter 15 case is c/o Chris Johnson Associates Ltd., 80 Shedden Road, PO Box 2499, George Town, Grand Cayman KY1-1104, Cayman Islands.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................1

JURISDICTION AND VENUE ...............................................................................................2

BACKGROUND .......................................................................................................................4

    I.    The Debtor and Related Entities ..................................................................................4

    II.    The Petitioners' Appointment as Joint Official Liquidators...................................4

        a.    Events Leading to Appointment ........................................................................4

        b.    Appointment of the Petitioners as Joint Provisional Liquidators .....................8

        c.    Appointment of the Petitioners as Joint Official Liquidators ...........................9

RELIEF REQUESTED.............................................................................................................15

BASIS FOR RELIEF ...............................................................................................................16

    I.    The Debtor is Eligible to be a Debtor Under the Bankruptcy Code .....................16

    II.    The Cayman Proceeding Should Be Recognized as a Foreign Main Proceeding .18

        A.    The Cayman Proceeding Constitutes a "Foreign Proceeding" ........................19

        B.    The Cayman Proceeding Is a "Foreign Main Proceeding".............................21

        C.    The Petitioners Satisfy the Requirements for "Foreign Representatives" Under Section 101(24) of the Bankruptcy Code.........................................................27

        D.    The Chapter 15 Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code ............................................................28

    III.    The Debtor Is Entitled to Automatic Relief Under Section 1520 of the Bankruptcy Code .................................................................................................................28

    IV.    Certain Additional Relief Is Both Necessary and Appropriate to Implement the Cayman Proceeding and Should be Granted .........................................................29

        A.    The Freezing Order Should Be Enforced.........................................................31

        B.    Examination of Witnesses and Production of Documents are Necessary and Appropriate .....................................................................................................37

NOTICE ........................................................................................................................38

NO PRIOR REQUEST ...............................................................................................39

CONCLUSION ............................................................................................................39

## TABLE OF AUTHORITIES

*Cases:*

*In re ABC Learning Centres Ltd.,*
728 F.3d 301 ............................................................................................................... 31

*In re AJW Offshore, Ltd.,*
488 B.R. 551 (Bankr. E.D.N.Y. 2013) ......................................................................... 36

*In re Argo Santino, OOD,*
653 B.R. 79 (Bankr. S.D.N.Y. 2023) ........................................................................... 18

*Armada (Singapore) Pte Ltd. v. Shah* (*In re Ashapura Minechem Ltd.*),
480 B.R. 129 (S.D.N.Y. 2012) ...................................................................................... 20

*In re Atlas Shipping A/S,*
404 B.R. 726 (Bankr. S.D.N.Y. 2009) .......................................................................... 36

*In re Avanti Communs. Grp. PLC,*
582 B.R.616 (Bankr. S.D.N.Y. 2018) ........................................................................... 30

*In re B.C.I. Finances Pty Ltd.,*
583 B.R. 288 (Bankr. S.D.N.Y. 2018) .......................................................................... 16

*In re Bd. of Directors of Telecom Argentina, S.A.,*
528 F.3d 162 (2d Cir. 2008) ........................................................................................... 35

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,*
389 B.R. 325 (S.D.N.Y. 2008) ....................................................................................... 29

*In re Berau Capital Resources Pte Ltd.,*
540 B.R. 80 (Bankr. S.D.N.Y. 2015) ................................................................. 3, 16, 18

*In re Betcorp Ltd.,*
400 B.R. 266 (Bankr. D. Nev. 2009) ............................................................................. 20

*In re Betcorp Ltd.,*
400 B.R. 281 (Bankr. D. Nev. 2009) ............................................................................. 20

*In re Betcorp Ltd.,*
400 B.R. 291 (Bankr. D. Nev. 2009) ............................................................................. 24

*In re British Am. Ins. Co. Ltd.,*
425 B.R. 884 (Bankr. S.D. Fla. 2010) .......................................................................... 23

*In re British Am. Isle of Venice (BVI), Ltd.,*
441 B.R. 713 (Bankr. S.D. Fla. 2010) ........................................................ 22, 26

*Canada Southern Ry. Co. v. Gebhard,*
109 U.S. 527 (1883) ....................................................................................34

*In re Cell C Proprietary Ltd.,*
571 B.R. 542 (Bankr. S.D.N.Y. 2017) ...................................................... 18

*CT Investments Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V.,*
482 B.R. 96 (Bankr. S.D.N.Y. 2012) ........................................................ 36

*In re Daebo Int'l Shipping Co., Ltd.,*
543 B.R. 47 (Bankr. S.D.N.Y. 2015) ........................................................ 31

*In re Energy Coal S.P.A.,*
582 B.R. 619 (Bankr. D. Del. 2018) ......................................................... 31

*In re Foreign Economic Industrial Bank Ltd,*
607 B.R. 160 (Bankr. S.D.N.Y. 2019) ...................................................... 17

*In re Gercke,*
122 B.R. 621 (Bankr. D.D.C. 1991) .......................................................... 34

*In re Glitnir banki hf.,* Case No. 08-14757 (SMB),
2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) .......................... 37, 38

*In re Globo Comunicacoes e Participacoes S.A.,*
317 B.R. 235 (S.D.N.Y. 2004) .................................................................. 16

*Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.,*
527 U.S. 308 S. Ct. 1961, 144 LEd.2d 319 (1999*)* ................................. 33

*Hilton v. Guyot,*
159 U.S. 113 S. Ct. 139, 40 L.Ed. 95 (1985) ........................................... 30

*In re Ho Seok Lee,*
348 B.R. 799 (Bankr. W.D. Wash 2006) .................................................. 35

*Hosking v. TPG Capital Mgmt. (In re Hellas Telecomms. (Lux.) II SCA),*
535 B.R. 543 (Bankr. S.D.N.Y. 2015) ...................................................... 31

*In re Int'l Banking Corp.,*
439 B.R. 614 (Bankr. S.D.N.Y. 2010) ...................................................... 36

*In re Ionosphere Clubs, Inc.*
156 B.R. 414 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994)...................................38

*Lavie v. Ran,*
406 B.R. 277 (S.D.Tex 2009)............................................................................ 23

*In re Lines,*
81 B.R. 267 (Bankr. S.D.N.Y. 1988).................................................................... 34

*In re Metcalfe & Mansfield Alternative Investments,*
421 B.R. 685 (Bankr. S.D.N.Y. 2010) ................................................................. 35

*In re Millard,*
501 B.R. 644 (Bankr. S.D.N.Y. 2013) ................................................................. 21

*In re MMG LLC,*
256 B.R. 544 (Bankr. S.D.N.Y. 2000) ................................................................. 34

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),*
714 F.3d 127 (2d Cir. 2013)................................................................... 21, 22, 23

*In re Nexgenesis Holdings Ltda.,*
2024 WL 3616732 (Bankr. S.D. FL July 31, 2024) ................................................ 33

*In re Octaviar Administration Pty Ltd.,*
511 B.R. 361 (Bankr S.D.N.Y. 2014)............................................................ 17, 18

*In re Olinda Star Ltd.,*
614 B.R. 28 (Bankr. S.D.N.Y. 2020)................................................................... 35

*In re Overnight & Control Com'n of Avánzit, S.A.,*
385 B.R. 525 (Bankr. S.D.N.Y 2008)................................................................... 20

*In re Paper I Partners, L.P.,*
283 B.R. 661 (Bankr. S.D.N.Y. 2002) ................................................................. 17

*In re Petition of Brierley,*
145 B.R. 151 (Bankr. S.D.N.Y. 1992) ................................................................. 34

*In re Petition of Garcia Avila,*
296 B.R. 95 (Bankr. S.D.N.Y. 2003)................................................................... 34

*In re Poymanov,*
571 B.R. 24 (Bankr. S.D.N.Y. 2017)................................................................... 17

*In re Pro-Fit Holdings Ltd.,*
391 B.R. 850 (Bankr. C.D. Cal. 2008) ............................................................ 37

*In re Qimonda AG Bankr. Litig.,*
433 B.R. 547 (E.D. Va. 2010) ....................................................................... 36

*In re Ran,*
607 F. 3d 1017 (5th Cir. 2010) ..................................................................... 23

*In re Rede Energia S.A.,*
515 B.R. 69 (Bankr. S.D.N.Y. 2014)............................................................. 29

*In re Rubin,*
160 B.R. 269 (Bankr. S.D.N.Y. 1993) ........................................................... 34

*In re Saad Investment Finance Co. (No. 5) Ltd.,*
No. 09-13985 (Bankr. D. Del. Dec. 17, 2009) ............................................... 21

*In re Serviços de Petróleo Constellation S.A.,*
600 B.R. 237 (Bankr. S.D.N.Y. 2019) ....................................................... 16, 17

*In re Sino-Forest Corp.,*
501 B.R. 655 (Bankr. S.D.N.Y. 2013) ........................................................... 30

*SNP Boat Serv. S.A. v. Hotel Le St. James,*
483 B.R. 776 (S.D. Fla. 2012)....................................................................... 36

*In re SPhinX, Ltd.,*
351 B.R. 103 (Bankr. S.D.N.Y. 2006) aff'd ..................................... 22, 27, 29, 37

*In re SPhinX, Ltd.,*
371 B.R. 10 (S.D.N.Y. 2007) .............................................................. 21, 22, 27

*In re Suntech Power Holdings Co., Ltd.,*
520 B.R. 399 (Bankr. S.D.N.Y. 2014) ....................................................... 22, 23

*In re Tri-Continental Exch. Ltd.,*
349 B.R. 627 (Bankr. E.D. Cal. 2006)............................................................ 22

*In re U.S. Steel Can. Inc.,*
571 B.R. 600 (Bankr. S.D.N.Y. 2017) ........................................................... 17

*Other Authorities:*

11 U.S.C. §§ 101–1532 ................................................................................................1

11 U.S.C. § 101(23) ...........................................................................................19, 20, 21

11 U.S.C. § 101(24) ...................................................................................2, 15, 27, 38

11 U.S.C. § 101(41) .........................................................................................................27

11 U.S.C. § 105(a) ...............................................................................................1, 15, 29

11 U.S.C. § 109(a) ...............................................................................16, 17, 18, 19

11 U.S.C. § 362(a) ..........................................................................................................28

11 U.S.C. § 1501 ...............................................................................................................29

11 U.S.C. § 1501(a) ........................................................................................................31

11 U.S.C. § 1502 ...............................................................................................................18

11 U.S.C. § 1502(4) .............................................................................................1, 15, 21

11 U.S.C. § 1504 ......................................................................................................1, 2, 28

11 U.S.C. § 1506 ...............................................................................................................18

11 U.S.C. § 1507 .................................................................................................................1

11 U.S.C. § 1507(a) ........................................................................................................15

11 U.S.C. § 1509(a) ...............................................................................................1, 2, 28

11 U.S.C. § 1509(b)(2)-(3) ...........................................................................................15

11 U.S.C. § 1510 .................................................................................................................1

11 U.S.C. § 1515 ....................................................................1, 2, 3, 15, 19, 28, 38

11 U.S.C. § 1515(b) ........................................................................................................27

11 U.S.C. § 1515(b)(1) ...........................................................................................2, 28

11 U.S.C. § 1515(c) ................................................................................................2, 28

11 U.S.C. §1516(c) ................................................................................................21, 22

11 U.S.C. § 1517 ...................................................................................................1, 15, 28, 38

11 U.S.C. § 1517(a) .........................................................................15, 18, 19, 26, 27, 28

11 U.S.C. § 1517(a)(2) ........................................................................................................26

11 U.S.C. § 1517(a)(3) ........................................................................................................27

11 U.S.C. § 1517(b)(1) .............................................................................................15, 19, 23

11 U.S.C. § 1520 .............................................................................................................1, 38

11 U.S.C. § 1520(a) ......................................................................................................28, 29

11 U.S.C. § 1521 ...............................................................................................1, 29, 35, 39

11 U.S.C. § 1521(a) .........................................................................................15, 30, 31, 39

11 U.S.C. § 1521(a)(4) ..................................................................................................36, 37

11 U.S.C. § 1522 ............................................................................................................1, 36

11 U.S.C. § 1522(a) ......................................................................................................31, 35

11 U.S.C. § 1525(a) .............................................................................................................15

28 U.S.C. § 157 ....................................................................................................................2

28 U.S.C. § 157(b) ................................................................................................................2

28 U.S.C. § 1334 ..................................................................................................................2

28 U.S.C. § 1410 ..................................................................................................................3

28 U.S.C. § 1410(1) ..............................................................................................................3

*8 COLLIER ON BANKRUPTCY* ¶ 1521.02 (6th ed. Rev. 2012)........................................37

*Collier on Bankruptcy* ¶ 304.05, at 304-21 (15th ed. Rev. 2003) ........................................33

Companies Act § 110(1)(a)..................................................................................................20

Companies Act § 140(1) .....................................................................................................20

Federal Rule of Bankruptcy Procedure 2002(q) ................................................................38

Federal Rule of Bankruptcy Procedure 2004........................................................................................37

x

I, Karen Scott, who, along with Russell Homer of Chris Johnson Associates Ltd. (the "Petitioners"), were appointed as the Joint Official Liquidators of Canterbury Securities, Ltd. ("CSL" or the "Debtor"), respectfully submit this combined Declaration [2] (the "Petitioners' Declaration") and Motion for (I) Recognition of Foreign Main Proceeding and (II) Related Relief (the "Motion"). The Motion is filed in furtherance of the *Official Form Petition* filed concurrently herewith [Docket No. 1] (the "Chapter 15 Petition").

## PRELIMINARY STATEMENT

The Petitioners commenced this case (this "Chapter 15 Case") to obtain recognition of the Official Liquidation of CSL pending before the Grand Court of the Cayman Islands, Financial Services Division, in the Cayman Islands (the "Cayman Proceeding"). The Petitioners anticipate that the Chapter 15 Case will complement the Debtor's primary proceedings in the Cayman Islands to ensure the effective and economic administration of the Debtor's liquidation efforts. The Chapter 15 Case may prove vital to assisting the Petitioners' investigations of alleged wrongdoings and their efforts to recover assets of CSL for the benefit of its creditors.

By this Motion, the Petitioners respectfully seek, pursuant to sections 105(a), 1504, 1507, 1510, 1515, 1517, 1520, 1521 and 1522 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), entry of an order substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order") (i) granting recognition of the Cayman Proceeding pursuant to section 1517 of the Bankruptcy Code as a "foreign main proceeding" (as defined in section 1502(4) of the Bankruptcy Code) of the Debtor, and all relief included therewith as provided in section 1520 of the Bankruptcy Code; (ii) recognizing the Petitioners as the "foreign representatives" (as

---

[2]   The Petitioners' verification with respect to the factual contents hereof is set forth below in the section entitled "Verification of Petitioners' Declaration."

defined in section 101(24) of the Bankruptcy Code) of the Debtor; and (iii) granting such other and further relief as the United States Bankruptcy Court for the Southern District of New York (the "Court") deems just and proper.  The relief requested in this Motion is without prejudice to any additional relief the Petitioners may request.

In addition to the Petitioners' Declaration, the Petitioners submit in support of the Chapter 15 Petition and this Motion the *Declaration of John Harris in Support of Debtor's Chapter 15 Petition for Entry of Order Recognizing Foreign Main Proceeding and Granting Related Relief* (the "Harris Declaration," and together with the Petitioners' Declaration, the "Declarations"), which has been filed contemporaneously herewith and is incorporated herein by reference.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012, Reference M-431 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      This case has been properly commenced pursuant to sections 1504 and 1509 of the Bankruptcy Code by the filing of the Chapter 15 Petition for recognition of the Cayman Proceeding under section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1504, 1509(a).  In accordance with section 1515(b)(1) of the Bankruptcy Code, the Petitioners attached to the Chapter 15 Petition a copy of the Winding Up Order in the Cayman Proceeding, which appointed the Petitioners as Joint Official Liquidators with respect to the Cayman Proceeding (the "Winding Up Order").   In accordance with section 1515(c) of the Bankruptcy Code, the Petitioners also submitted herein that no other "foreign proceedings" with respect to the Debtor are known to the Petitioners except for the recognition proceeding brought by the Petitioners in Canada in which the Canadian Court

recognized the Cayman Proceeding.  Accordingly, the requirements of section 1515 have been satisfied.

3.      Venue is proper in this District.  Section 1410 of title 28 of the United States Code provides that a case under chapter 15 of the Bankruptcy Code may be commenced in a district in which the debtor has its principal place of business or principal assets in the United States. 28 U.S.C. § 1410(1); *see also In re Berau Capital Res. Pte Ltd.*, 540 B.R. 80, 82 n.1 (Bankr. S.D.N.Y. 2015).

4.      CSL's principal assets in the United States are located within this District.  The Debtor has deposited US $35,000 in Klestadt Winters Jureller Southard & Stevens, LLP's New York-based trust account maintained at Flagstar Bank, located at 950 Third Avenue, New York, New York 10022 (the "Retainer Account"), and such funds continue to be held in that trust account.

5.      In addition, the Debtor has other significant contacts both in the United States and in New York, including, *inter alia*, as follows: (a) one of the Debtor's two directors, Eric Miller, resided at all relevant times in the New York; (b) the Debtor's retained corporate counsel, Lipman Law PLLC and Kobre & Kim, are both located in New York; (c) the Debtor maintained business and business transactions with U.S. based financial brokers, including Viewtrade Securities Inc., Scottsdale Capital Advisors, and Alter Domus a/k/a Cortland Capital Markets; (d) the Debtor may have transferred funds to, or have rights to funds held at, accounts held by CIBC USA ("CIBC") in the United States; (e) the Debtor may have rights to certain patents or other intellectual property in the United States, and registered under the U.S. Patent and Trademark Office; (f) the Debtor's corporate documents and information may be held in the United States, including by its director

3

Eric Miller or retained counsel Lipman Law PLLC and Kobre & Kim; and (g) the Debtor may have claims arising in the United States.[3]

## BACKGROUND

### I.   The Debtor and Related Entities

6.    CSL is a Cayman Islands entity that was incorporated as an exempted limited company on January 16, 2015, with the purpose to undertake Investment/Asset Management. Its registered office was and still is at WB Corporate Servies (Cayman) Ltd., 71 Fort Street, George Town, Grand Cayman, KY1-1111, Cayman Islands. A copy of CSL's Certificate of Incorporation is attached hereto as **Exhibit B**.

7.    CSL registered with the Cayman Island Monetary Authority ("CIMA") as a Securities-Registered Person on January 1, 2020 to conduct securities investment business for high net worth and/or sophisticated persons. Filings for CSL obtained through CIMA show that prior to the requirement to be a Registered Person, CSL was registered with CIMA as an Excluded Person. CIMA currently designates CSL as ACTIVE.

### II.   The Petitioners' Appointment as Joint Official Liquidators.

#### a.   Events Leading to Appointment.

8.    The Cayman Proceeding stems from a judgment ("Judgment") dated August 17, 2023, entered in the Cayman Court against CSL by Fortunate Drift Limited ("FDL").

9.    CSL is owned by Canterbury Group ("CG"), which in turn is owned by Erin Winczura ("Winczura"), a Canadian citizen who resides in the Cayman Islands. The directors of CSL are Winczura and Eric Miller, a resident of the United States and New York.

---

[3] The Debtor's contacts to the United States, and New York, may also be further enhanced upon receipt of additional discovery from some or all of these U.S. based parties, each of whom has still not provided requested information and documents which will be the subject to further discovery.

10.     FDL is a BVI company, whose principals are based in Hong Kong and mainland China.

11.     In 2018 CSL entered into a brokerage agreement with FDL, whereby FDL deposited 6 million shares of YRIV, a NASDAQ listed company, with CSL.  These shares were subsequently the subject of a Stock Purchase Agreement ("SPA") between FDL and a company called PFS Ltd ("PFS"), a Cayman incorporated company. Unbeknownst to FDL, PFS was also owned and controlled by Winczura.  FDL and PFS, with the assistance of CSL, entered into the SPA whereby PFS purchased 1,144,584 shares of YRIV from FDL for $10,000,000.   The SPA contained a "Put Option" allowing PFS to put the purchased shares back to FDL.   FDL agreed to leave sufficient shares in its account with CSL to cover its obligations under the Put Option if it was exercised by PFS.

12.     Between August and December 2018, FDL discovered that the owner of PFS was Winczura, who was also the owner of CSL.  FDL also suspected that PFS had waived the Put Option by selling the purchased shares, and therefore sought the return of the remaining YRIV shares deposited in its account with CSL.  Whether or not the Put Option was waived is currently the subject of proceedings in Nevada between PFS and FDL.

13.     On December 6 and 7, 2018, CSL sold 1,886,261 of FDL's shares for $19,959,397.18, supposedly to protect PFS's position should the Put Option be exercised.

14.     FDL commenced proceedings against CSL before the Cayman Court seeking relief for: (i) breach of fiduciary duty in failing to disclose the connection between CSL and PFS arising out of Winczura's interests in both companies and (ii) breach of duty and/or conversion of FDL's shares because it sold the shares without FDL's authority.

15.     After a two-week trial in 2023, the Cayman Court found in favor of FDL on the issue of liability.  The Cayman Court held a hearing on December 12 and 13 2023 to determine the specific relief to be awarded to FDL.

16.     On September 7, 2023, the Cayman Court issued an order ('Restraining Order') in support of a freezing order previously obtained by FDL, requiring CSL to make a payment of $15,801,626.72 into an interest-bearing bank account held with a first-class bank in the Cayman Islands in the name of McGrath Tonner, CSL's former Cayman counsel.

17.     The circumstances of the Judgment were as follows:

a.  On May 22, 2023, FDL obtained an injunction freezing the proceeds of sale of certain shares beneficially owned by FDL

b.  CSL, by Winczura, represented that the proceeds of the sale of the shares were held by a company called Canadian Escrow Company Limited ("Canadian Escrow").

c.  On June 16, 2023, at the conclusion of the substantive trial on liability, FDL applied for and obtained an Order requiring CSL to disclose how the proceeds of sale of the shares were currently and had been held (the "Information Order").  The Information Order provided that CSL was required to provide FDL with a screen shot showing the current location, precise value and registered custodian of the proceeds so far as the proceeds remain in CSL's control.

d.  After repeated applications for extension of time to comply with the Information Order, CSL (by Winczura) gave disclosure of a treasury bill purchased on July 24, 2023 ("Treasury Bill") to give the Court "reassurance

6

there are sufficient assets that could satisfy a judgment." CSL (by Winczura) expressly claimed that the Treasury Bill was not purchased with the proceeds of the sale of FDL's shares.

    e.   On August 9, 2023, FDL applied to freeze the Treasury Bill, and on August 17, 2023, the Cayman Court made an order freezing the Treasury Bill.

    f.   Thereafter, CSL (by Winczura) informed the Cayman Court that the Treasury Bill had in fact been sold and CSL had acquired alternative assets in its place, being Class B Preference Shares in a Canadian company called Thinkbox Atlas Investments Limited ("<u>Thinkbox</u>").

18.     CSL failed to pay the amount required under the Restraining Order.

19.     A further hearing took place on December 12 and 13, 2023 to determine the amounts which CSL was to pay FDL following the judgment on liability. On December 13, 2023, the Cayman Court entered an order under which, *inter alia*,

- CSL was ordered to pay FDL forthwith the sum of $1,974,057.44;
- CSL shall hold the proceeds of the sale of FDL's shares and the remaining shares in trust for FDL;
- FDL's claim for unjust enrichment succeeded, and its claim for conversion was dismissed; CSL's counterclaims were dismissed; and
- Judgment was reserved in relation to the amount of damage CSL was to pay to FDL in relation to its breach of contract claim.

20.     During the course of the FDL litigation the Court made freezing and information orders against CSL and Winczura which were not complied with. Winczura produced evidence to the effect that CSL had assets in Canada with Canaccord Genuity (the "<u>Treasury Bill</u>") and Canadian Escrow (USD15.5 million in trust cash equivalent) that were sufficient to satisfy FDL's claim. ***The Treasury Bill and the Canadian Escrow confirmation evidence produced by Winczura turned out to be forged documents and did not exist.***

### b. Appointment of the Petitioners as Joint Provisional Liquidators

21.     Upon application of FDL by Summons dated December 1, 2023, an Order for Joint Provisional Liquidators ('JPL Order') dated December 13, 2023 was entered by the Honorable Justice Ian Kawaley of the Cayman Court, under FSD 364 of 2023 (IKJ), placing CSL into provisional liquidation and appointing the Petitioners as the Joint Provisional Liquidators.

22.     Upon their appointment as Joint Provisional Liquidators, the Petitioners took the following actions, among other things:

- Met with counsel for CSL, and followed up with numerous correspondence, in an effort to obtain contact details for Winczura and relevant information to assist them in tracking and tracing the assets of CSL and provide sufficient data to enable a reasoned assessment as to the affairs of the company and its solvency.

- Undertook research to independently verify the current status and/or standing of key and related parties; and to consider available information in respect of other business ventures, companies or legal proceedings to which the company, its shareholders CG, and/or Winczura, were or historically have been involved with, whether directly or indirectly;

- Attended to their statutory appointment obligations as laid out in the Cayman Companies Winding Up Rules (2023 Consolidation) by filing the JPL Order with the Registrar of Companies, preparing and sending Notice of the JPL Order for publication, and sending copies of the JPL Order to every person who appeared to the Petitioners to have been a director or professional service provider of the company at the time the Petitioners' application/winding up petition was presented;

- Communicated with key and related parties, including Canadian entities that purportedly held the company's key assets; current directors and professionals; and Cayman local banks and IT providers to ascertain location of assets;

- Engaged Canadian counsel to investigate key entities and assets, as a precursor to seeking formal recognition; and

8

- Engaged Cayman Islands' counsel to provide advice as required and assist in determining strategic and pragmatic solutions to achieve the Petitioners' objectives as detailed in the order appointing them;

23.     The Petitioners have made extensive efforts to meet with Winczura. However, she has refused or failed to attend meetings and has refused and failed to produce any requested documentation.  Similarly, Mr. Miller, the U.S. (New York) based director, has failed to meet or provide any information or documentation.

24.     On January 9, 2024, the Petitioners provided their *Preliminary Report of the Joint Provisional Liquidators* to the Cayman Court.

**c.  Appointment of the Petitioners as Joint Official Liquidators**

25.     After providing a report on their initial findings to the Cayman Court, on January 16, 2024, the petition was heard by the Cayman Court for a winding up order.

26.     On January 16, 2024, the Cayman Court entered the Winding Up Order in accordance with Cayman law to appoint the Petitioners as the Joint Official Liquidators of CSL.

27.     Upon their appointment as Joint Official Liquidators, the Petitioners had authority to exercise a broad range of powers and actions of the Debtor.

28.     Schedule 3, Part I to the Companies Act sets out the powers that the Petitioners as joint official liquidators may exercise with the sanction of the Cayman Court (unless otherwise contrary to the Winding Up Order). They are:

a.     *Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.*

b.     *Power to carry on the business of the company so far as may be necessary for its beneficial winding up.*

c.     *Power to dispose of any property of the company to a person who is or was related to the company.*

d.     *Power to pay any class of creditors in full.*

e.    *Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.*

f.    *Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.*

g.    *Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.*

h.    *The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.*

i.    *The power to raise or borrow money and grant securities therefor over the property of the company, the power to engage staff (whether or not as employees of the company) to assist him in the performance of his functions.*

j.    *The power to engage attorneys and other professionally qualified persons to assist him in the performance of his functions.*

29.    Schedule 3, Part II of the Companies Act further provides that the Petitioners are permitted to exercise the following powers without the Cayman Court's sanction:

a.    *The power to take possession of collect and enter the property of the company and for that purpose to take all such proceedings as he considers necessary.*

b.    *The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.*

c.    *The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.*

    d.      *The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.*

    e.      *The power to promote a scheme of arrangement pursuant to section 86.*

    f.      *The power to convene meetings of creditors and contributories.*

    g.      *The power to do all other things incidental to the exercise of his powers.*

30.    According to the Winding Up Order, the Petitioners can exercise, without further sanction of the Cayman Court, a broad range of powers, including, *inter alia*, to:

- *to bring or defend any action or other legal proceedings in the name and on behalf of the Company other than the Petition;*

- *to carry on the business of the Company so far as may be necessary for its beneficial winding up;*

- *to sell any of the Company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels;*

- *engage staff (whether or not as employees of the Debtor) to assist in the performance of their functions;*

- *engage attorneys and other professionally qualified persons to assist in the performance of their functions;*

- *to take such actions as may be necessary or desirable to obtain recognition of the joint official liquidators and/or their appointment in Canada and the United States of America and/or in any other relevant jurisdiction, and to make applications to the courts of such jurisdictions for that purpose or for the purpose of obtaining information to assist them in discharging their functions; and*

- *to do all such things as may be necessary or expedient to freeze or preserve property held by any person or entity, whether a related party or otherwise, against which the Company has a claim and where there is a risk of dissipation in such jurisdictions as may be appropriate including, without limitation, in the Cayman Islands, Canada and the United States of America.*

31.    Since their appointment on January 16, 2024, the Petitioners have taken numerous steps to wind-up CSL and carry out their duties regarding the Cayman Proceeding, including as follows:

a.    Obtained recognition of the Cayman Proceeding in Canada.

b.    Obtained orders for Winczura to provide information on CSL's assets which she has not complied with.

c.    Commenced actions in Cayman in the name of Petitioners and CSL against Winczura, PFS and CG.

d.    Obtained a Freezing Order (as defined below) over all assets of Winczura, PFS and CG, with obligations to disclose their assets. None of the defendants have complied with the disclosure obligations.

e.    Obtained default judgment against Winczura, PFS and CG for damages to be assessed.

32.    Upon application of the Petitioners, on April 26, 2024, the Cayman Court entered its *Injunction Prohibiting Disposal of Assets* (the "Freezing Order") against each of (i) Winczura, (ii) PFS and (iii) CG (collectively as related to the Freezing Order, the "Respondents").  A copy of the Freezing Order is attached hereto as **Exhibit C**.

33.    As set forth above, each of the Respondents was subject to the jurisdiction of the Cayman Courts – Winczura had her permanent residence in the Cayman Islands; CG and PFS were Cayman Island registered companies.

34.    As set forth therein, the Freezing Order was entered by the Cayman Court upon application of the Petitioners and issued after hearing and considering argument and acceptance of undertakings provided by the Petitioners.  While the Freezing Order was made at a hearing without

notice to the Respondents, it requires service upon the Respondents of the Freezing Order and related evidence and exhibits and explicitly states that "the Respondents have a right to apply to the Court to vary or discharge the [Freezing] Order." *See* Freezing Order, p. 2, Schedule 1. Further, the Freezing Order states that a further hearing with respect to the Freezing Order will be held on a future date to be fixed by the Court. *See id*. at p. 2.

35.     Pursuant to the terms of the Freezing Order, the Respondents were (i) enjoined from disposing of or dealing with or diminishing the value of any assets wheresoever located up to the value of US30,000,000, including as may be held in the name of Respondents or the Debtor at CIBC; and (ii) required to provide the Petitioner's counsel with the following information within seven (7) days of the date the Freezing Order is served: (a) full details of the location, nature and amount of any assets held either directly or indirectly by the Respondents; (b) full details of the location, nature and amount of any assets which are or were at any time the property of the Debtor or which were held either directly or indirectly through the Debtor; (c) bank account statements showing the location of the proceeds of the sale of the YRIV shares, a screen shot showing the current location, precise value and the registered custodian of the proceeds of the sale of the YVIV shares, and (d) full details of any transaction related to the acquisition and disposal by the Debtor of (i) shares in Thinkbox and (ii) a treasury bill as represented or detailed by Winczura. *See* Freezing Order, p. 3.

36.     On June 4, 2024, the Cayman Court issued its *Reasons for Decision* ("Mareva Ruling"), whereby it set out basis for its granting of the Freezing Order.   A copy of the Mareva Ruling is attached hereto as **Exhibit D**.

37.     The Respondents have failed and refused to provide the information under the Freezing Order, or otherwise comply with same.

13

38.     On June 6, 2024, the Cayman Court issued a default interlocutory judgment for damages to be assessed in respect of the claim against PFS and CG, following their failure to serve a defence within the time period prescribed by the Court rules (the "CG and PFS Default Judgment").  A copy of the CG and PFS Default Judgment is attached hereto as **Exhibit E**.

39.     On July 12, 2024, the Cayman Court held a further hearing with respect to the Freezing Order, in which it heard argument on four related issues: (1) whether the Freezing Order should be continued and varied in effect to include all assets of CG and PFS up to value of USD$30 million; (2) whether an order for substituted service on Winczura should be made; (3) whether a declaration that the writ of summons was validly served upon Winczura by email on April 29, 2024 should be made; and (4) whether there should be a preliminary assessment of damages against CG and PFS pursuant to a "default interlocutory judgment" dated June 3, 2024. At this hearing CG and PFS were represented by counsel. Winczura emailed the Cayman Court directly prior to the hearing (evidencing notice thereof).  The Cayman Court held in favor of the Petitioners on issues "1-3", and adjourned decision on issue "4".

40.     On July 31, 2024, the Cayman Court held a further hearing on the Freezing Order and related matters.  The issue of the preliminary assessment of damages was stayed.   The issue of the Petitioners' application for a Debarring Summons was scheduled for hearing on October 2, 2024, with a briefing schedule set out by the Cayman Court.

41.     On September 25, 2024 the Cayman Court issued a default interlocutory judgment for damages to be assessed in respect of certain of the claims against Winczura following her failure to serve a defence within the time period prescribed by the Court rules (the "Winczura Default Judgment", and with the CG and PFS Default Judgment as the "Default Judgments").  A copy of the Winczura Default Judgment is attached hereto as **Exhibit F**.

42.    At a hearing on October 2, 2024, the Cayman Court ordered that, unless Winczura, PFS and CG provide the disclosure required under the terms of the Freezing Order (being disclosures of their own assets and those of CSL) by October 16, 2024,  then they be debarred from further defending the Cayman proceedings or from filing any further application or evidence without the permission of the Cayman Court (the "Debarring Order").  A copy of the Debarring Order is attached hereto as **Exhibit G**.

43.    To date, none of Winczura, CG nor PFS have provided any of the required information or documents, including as to the assets of the Debtor, as required under the various orders of the Cayman Court, and all despite sufficient notice thereof.

44.    By Orders dated October 10, 2024, upon application of CSL, the Cayman Court appointed the Petitioners as joint provisional liquidators of both CG and PFS, with all associated powers under Cayman Islands law including take possession of all assets of the companies.  Copies of the respective Orders are attached hereto as **Exhibits H and I**.  The Winding Up Petitions for each of CG and PFS shall be heard by the Cayman Court on November 12, 2024.  Copies of the respective Notices of Hearing are attached as **Exhibit J and K.**

**RELIEF REQUESTED**

45.    The Petitioners request that this Court enter an order, substantially in the form of the Proposed Order attached hereto as **<u>Exhibit A</u>**, pursuant to sections 105(a), 1507(a), 1509(b)(2)-(3), 1515, 1517, 1521(a) and 1525(a) of the Bankruptcy Code that:

    a.    grants recognition to the Cayman Proceeding as a foreign main proceeding (as defined in section 1502(4) of the Bankruptcy Code), and grants all of the relief afforded to such proceedings, pursuant to sections 1517(a) and (b)(1) of the Bankruptcy Code;

    b.    recognizes the Petitioners as "foreign representatives," as defined in section 101(24) of the Bankruptcy Code, in respect of the Cayman Proceeding;

15

c.  entrusts Petitioners with the administration of any and all of the Debtor's assets within the territorial jurisdiction of the United States;

d.  provides that this Court shall retain jurisdiction with respect to the effect, enforcement, amendment or modification of such order;

e.  enforces the Freezing Order within the territorial jurisdiction of the United States;

f.  provides for the Petitioners' examination of witnesses, taking of evidence and obtaining information concerning the Debtors' assets; and

g.  provides such other and further relief as the Court deems proper and just (collectively, the "Requested Relief").

## **BASIS FOR RELIEF**

### I.  **The Debtor is Eligible to be a Debtor Under the Bankruptcy Code**

46.  Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States … may be a debtor under this title." 11 U.S.C. § 109(a). "Foreign debtors seeking relief under chapter 15 must satisfy the debtor eligibility requirements set forth in section 109(a) of the Bankruptcy Code." *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 268 (Bankr. S.D.N.Y. 2019). The Debtor is eligible to be a debtor under section 109(a) because it has property in the United States.

47.  Section 109(a) of the Bankruptcy Code does not require a specific quantum of property in the United States, nor does it state when or for how long that property must be located within the United States. *See In re Berau Capital Res. Pte. Ltd.,* 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015). As such, courts in this District have required that the debtor have only nominal property in the United States to be eligible to file a chapter 15 case. *See, e.g., In re B.C.I. Finances Pty Ltd.,* 583 B.R. 288, 294 (Bankr. S.D.N.Y. 2018) ("[C]ourts that have construed the 'property' requirement in Section 109 with respect to foreign corporations and individuals have found the eligibility requirement satisfied by even a minimal amount of property located in the United

States.") (citation and internal quotation omitted); *In re Globo Comunicacoes e Participacoes S.A.,* 317 B.R. 235, 249 (S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor under Section 109, courts have required only nominal amounts of property to be located in the United States, and have noted that there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings."); *In re Paper I Partners, L.P.,* 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) ("[T]here is no statutory requirement as to the property's minimum value.").

48.     Here, the Debtor meets the flexible threshold for having property in the United States as required under section 109(a) because it owns the funds in the Retainer Account that are held in New York.  *See, e.g.*, *In re Foreign Economic Industrial Bank Ltd*, 607 B.R. 160, 166, 171-172 (Bankr. S.D.N.Y. 2019) (holding that retainer account was sufficient to satisfy section 109(a) requirement); *In re Serviços de Petróleo Constellation*, 600 B.R. at 268–69 (citing *In re U.S. Steel Can. Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017)) ("Some courts, including this one, have held that an undrawn retainer in a United States bank account qualifies as property in satisfaction of section 109(a)."); *In re Poymanov,* 571 B.R. 24, 30 (Bankr. S.D.N.Y. 2017) ("A debtor's funds held in a retainer account in the possession of counsel to a foreign representative constitute property of the debtor in the United States and satisfy the eligibility requirements of section 109(a)."); *In re Octaviar Admin. Pty Ltd.,* 511 B.R. 361, 372-374 (Bankr. S.D.N.Y. 2014) (noting the "line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States" and holding that cash in a client trust account maintained by U.S. counsel to the foreign representative satisfied section 109(a)).

49.     Moreover, the Debtor has other significant contacts both in the United States and in New York, including, *inter alia*, as follows: (a) one of the Debtor's two directors, Eric Miller,

resided at all relevant times in the New York; (b) the Debtor's retained corporate counsel, Lipman

Law PLLC[4] and Kobre & Kim, are both located within New York; (c) the Debtor maintained

business and business transactions with U.S. based financial brokers, including Viewtrade

Securities Inc., Scottsdale Capital Advisors, and Alter Domus a/k/a Cortland Capital Markets; (d)

the Debtor may have transferred funds to, or have rights to funds held at, accounts held by CIBC

in the United States; (e) the Debtor may have rights to certain patents or other intellectual property

in the United States, and registered under the U.S. Patent and Trademark Office; (f) the Debtor's

corporate documents and information may be held in the United States, including by its director

(Eric Miller) or former counsel (Lipman Law PLLC or Kobre & Kim); and (g) the Debtor may

have claims and causes of action arising in the United States including with respect to the

conversion of the books and records, claims against eth former directors, and conversion of assets

of the Debtor (the "Other U.S. Contacts"). *See In re Octaviar Administration Pty Ltd.,* 511 B.R.

361, 370 (Bankr S.D.N.Y. 2014); *In re Argo Santino, OOD,* 653 B.R. 79, 88 (Bankr. S.D.N.Y.

2023); *In re Berau Capital Resources Pte Ltd.*, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015).

50.     The Retainer Account and the Other U.S. Contacts are "independently sufficient"

bases for jurisdiction and satisfy the "property" requirement of section 109(a) of the Bankruptcy

Code. *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 552 (Bankr. S.D.N.Y. 2017). Thus, the Debtor

is eligible to be a chapter 15 debtor.

## II.     The Cayman Proceeding Should Be Recognized as a Foreign Main Proceeding

51.     The Cayman Proceeding is entitled to recognition as a foreign main proceeding

under chapter 15 of the Bankruptcy Code. Section 1517(a) of the Bankruptcy Code provides that,

---

[4] Lipman Law PLLC was the last provider of cash flow to settle certain invoices issued to CSL (and Winczura), namely invoices of McGrath Tonner attorneys' fees of circa $300,000 in early April 2024 (just before the Freezing Order was entered by the Cayman Court).

subject to section 1506 of the Bankruptcy Code, a court "shall" enter an order granting recognition

of a foreign proceeding if:

> (1)    such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

> (2)    the foreign representative applying for recognition is a person or body; and

> (3)    the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a); *see* H.R. Rep. No. 109-31, pt 1, at 113 (2005) ("The decision to grant

recognition is not dependent upon any findings about the nature of the foreign proceedings… The

requirements of this section… are all that must be fulfilled to attain recognition.").   Section

1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized…(1)

as a foreign main proceeding if it is pending in the country where the debtor has the center of its

main interests." 11 U.S.C. § 1517(b)(1).   Here, all of the requirements for recognition of the

Cayman Proceeding as a foreign main proceeding are satisfied.

### A.    The Cayman Proceeding Constitutes a "Foreign Proceeding"

52.    Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> [A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

53.    Based on this definition, courts have held that a "foreign proceeding" requires:

> (i)    [the existence of] a proceeding;

> (ii)    that is either judicial or administrative;

> (iii)    that is collective in nature;

> (iv)    that is in a foreign country;

19

(v)     that is authorized or conducted under a law related to insolvency or the adjustment of debts;

(vi)    in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and

(vii)   which proceeding is for the purpose of reorganization or liquidation.

*See Armada (Singapore) Pte Ltd. v. Shah* (*In re Ashapura Minechem Ltd.*), 480 B.R. 129, 136 (S.D.N.Y. 2012) (*citing In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re Overnight & Control Com'n of Avánzit, S.A.*, 385 B.R. 525, 532–36 (Bankr. S.D.N.Y 2008) (discussing factors).  The Cayman Proceeding satisfies all of these elements, and thus constitutes a "foreign proceeding" under section 101(23).

54.     The Cayman Proceeding was commenced pursuant to the Laws of the Cayman Islands.  The Laws of the Cayman Islands is the governing law of corporate insolvency in the Cayman Islands, including the Companies Act.  Key insolvency procedures provided for in the Laws of the Cayman Islands include provisional liquidation, official liquidation, schemes of arrangement (which is not strictly an insolvency procedure, but is often employed in respect of insolvent companies) as well as receivership (which is a procedure that may be instigated by a secured creditor pursuant to the terms of its security and not by the Cayman Court).  "A collective proceeding is one that considers the rights and obligations of all creditors. This is in contrast, for example, to a receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *Betcorp,* 400 B.R. at 281. Official liquidation under Cayman Islands law is a "collective judicial or administrative proceeding" within the meaning of section 101(23) of the Bankruptcy Code as such proceeding is not for the benefit of any single creditor, but rather operates to resolve and determine the rights of all claimants and stakeholders, *i.e.*, the creditor body as a whole.  *See* Harris Declaration at ¶ 30 (explaining Section 110(1)(a) of the Companies Act (as defined therein)

states that 'it is the function of an official liquidator to collect, realize and distribute the assets of the company to its creditors….");  *see also* Companies Act § 140(1) ("Subject to subsection (2), the property of the company shall be applied in satisfaction of its liabilities *pari passu….*").

*55.*     The Cayman Proceeding also satisfies the requirement that the assets of the Debtor be subject to the control or supervision of a foreign court. The liquidator in a Cayman Islands liquidation proceeding acts as an officer of the Cayman Court.  *See* Harris Declaration at ¶ 28. Cayman law and the Winding Up Order of the Cayman Court appointing the Petitioners as joint official liquidators provide that certain of the powers of a liquidator, including the power to compromise claims, may be exercised only with the sanction of the Cayman Court. *Id.* at ¶ 24.

56.     Bankruptcy courts have recognized that collective insolvency proceedings under the supervision of the Courts of the Cayman Islands are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code. *See, e.g., In re Millard*, 501 B.R. 644 (Bankr. S.D.N.Y. 2013); *In re Saad Investment Finance Co. (No. 5) Ltd.,* No. 09-13985 (Bankr. D. Del. Dec. 17, 2009); *In re SPhinX, Ltd.,* 371 B.R. 10 (S.D.N.Y. 2007).

57.     There can be no doubt, therefore, that the Cayman Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

**B.     The Cayman Proceeding Is a "Foreign Main Proceeding"**

58.     The Cayman Proceeding also qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). The relevant time period to determine the location of a debtor's "center of main interests" ("COMI") is the date on which the chapter 15 petition is filed. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013).

59.     While the Bankruptcy Code does not define COMI, section 1516(c) states that, in

the absence of evidence to the contrary, COMI is presumed to be the location of the debtor's

registered office. 11 U.S.C. §1516(c); *see also In re Tri-Continental Exch. Ltd*., 349 B.R. 627, 635

(Bankr. E.D. Cal. 2006) ("In effect, the registered office (or place of incorporation) is evidence

that is probative of, and that may in the absence of other evidence be accepted as proxy for, 'center

of main interests.'"). Section 1516(c) thus creates a rebuttable presumption in favor of the location

of the debtor's registered office as the debtor's center of main interests. CSL's registered office is

located in the Cayman Islands.

60.     Courts have developed a list of potentially relevant factors to consider in

determining whether such presumption has been rebutted: the location of the debtor's

headquarters, the location of those who actually manage the debtor, the location of the debtor's

primary assets, the location of the majority of the debtor's creditors or of a majority of the creditors

who would be affected by the case, and/or the jurisdiction whose law would apply to the most

disputes. *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10

(S.D.N.Y. 2007) (noting courts "should not apply such factors mechanically").

61.     The Court of Appeals for the Second Circuit has cautioned that "this nonexclusive

list is a helpful guide, but consideration of these specific factors is neither required nor dispositive."

*In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013). Rather, "any relevant activities,

including liquidation activities and administrative functions, may be considered in the COMI

analysis." *Id; see also In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 420 (Bankr. S.D.N.Y.

2014) (holding COMI had shifted to the Cayman Islands from China based on the liquidation

activities and broad authority of the Joint Provisional Liquidators); *In re British Am. Isle of Venice

(BVI), Ltd.*, 441 B.R. 713, 723 (Bankr. S.D. Fla. 2010) (holding COMI shifted to the BVI based

on liquidator's activities as sole person responsible for the management and control of the assets of the debtor for a period of 14 months).

62.     The Court of Appeals for the Second Circuit resolved a split among the courts in holding that, absent evidence that the COMI was manipulated in bad faith, these factors and activities should be analyzed as of the time of filing of the debtor's chapter 15 petition. *In re Fairfield Sentry Ltd.*, 714 F.3d at 133 ("We conclude that a debtor's COMI is determined as of the time of the filing of the Chapter 15 petition."). Indeed, the Bankruptcy Code uses the present tense with respect to determination of COMI, defining "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor *has* the center of its main interests." 11 U.S.C. §1517(b)(1) (emphasis added). Consistent with this interpretation, most courts have determined COMI based on the date of the filing of the chapter 15 petition. *In re Fairfield Sentry Ltd.*, 714 F.3d at 135 ("Most courts in this Circuit and throughout the country appear to have examined a debtor's COMI as of the time of the Chapter 15 petition.") (citing cases); s*ee also Lavie v. Ran*, 406 B.R. 277, 283 (S.D.Tex 2009) ("Chapter 15 requires the U.S. court to make an independent finding *at the time the petition for recognition is filed* in the U.S. court, rather than hindsight….") (emphasis in original), *aff'd*, *In re Ran*, 607 F. 3d 1017, 1025-26 (5th Cir. 2010); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 419 (Bankr. S.D.N.Y. 2014) ("[T]he Debtor's COMI on the date of the commencement of the chapter 15 case was the Cayman Islands."); *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 910 (Bankr. S.D. Fla. 2010) (explaining that the language of the Bankruptcy Code requires that the temporal focus "for purposes of a court making a determination under section 1517(b)(1), can be no earlier than the date the chapter 15 petition was filed.").

63.     Determination of COMI based on the present facts and circumstances, without reference to the debtor's prior operational history, promotes consistency in COMI determinations. As stated by the court in *Betcorp:*

> [A]n inquiry into the debtor's past interests could lead to a denial of recognition in a country where a debtor's interests are truly centered, merely because of past activities. This frustrates two of the purposes of the COMI inquiry – it decreases the effectiveness of the insolvency proceeding for which recognition is sought, and it may lead to a sub-optimal distribution of the debtor's assets, inasmuch as non-recognition where recognition is due may forestall needed inter-nation cooperation.

400 B.R. at 291 (internal citations and footnotes omitted).

64.     Application of these legal principles here mandates a determination that CSL's COMI is in the Cayman Islands.

65.     *Registered Office/Place of Incorporation.*  As noted, CSL is incorporated in the Cayman Islands, thereby creating a statutory presumption that the Cayman Islands is the Debtor's COMI.  In this case, from CSL's incorporation in 2015 to the present, the Debtor's registered office has at all times been in the Cayman Islands.  This fact creates a legal presumption in favor of the Cayman Islands as CSL's COMI.

66.     *Location of Headquarters.* CSL's headquarters is solely in the Cayman Islands. Since their appointment as Joint Provisional Liquidators in December of 2023, and continuing after the Winding Up Order and their appointment as the Joint Official Liquidators, CSL's headquarters have been in the Petitioners' office in the Cayman Islands.  All official actions and decisions on behalf of CSL are taken from that Cayman Islands office.

67.     *Location of Managers.* Management of CSL's day-to-day affairs is under the control of the Joint Official Liquidators in the Cayman Islands.  Significantly, all of the Debtor's interactions with its creditors and other third parties are conducted from the Cayman Islands.  Since the Winding Up Order, the Petitioners have attended to the ongoing affairs of the company, and

carried out the following tasks: (a) reviewed the position of the company's solvency and filed form CWR No. 13 with the Cayman Court confirming that the company should be treated as being insolvent; (b) provided statutory notice of their appointment to the Registrar of Companies and all required parties, and publicly advertised notice of the appointment in the Cayman Islands Gazette and subsequently advertised notice of the first meeting of creditors; (c) held the first meeting of creditors and formed the liquidation committee; (d) instructed counsel in preparing and obtaining recognition of the Cayman Proceeding in Canada; and (e) took advice from Cayman Islands and Canadian legal counsel regarding various statutory, legal and strategy matters;

68.     *Location of Company Assets and Operations.* CSL was registered with CIMA as a Securities-Registered Person on January 1, 2020 to conduct securities investment business for high net worth and/or sophisticated persons. Based upon their investigation, CSL had business operations in the Cayman Islands, held KYD, USD and CAD accounts at CIBC FirstCaribbean bank in the Cayman Islands, employed its personnel working out of offices in the Cayman Islands, and held investments or other assets in the Cayman Islands.  Upon information and belief, CSL entered into investment agreements with its clients, including FDL and Black Gold (defined later herein), in the Cayman Islands.  The Petitioners have been working to ascertain whether there are any other CSL assets in the US and Canada or elsewhere.

69.     *Location of Creditors.* The indebtedness to the largest creditor of the Debtor is a judgment entered by the Cayman Court in favor of FDL.   In fact, FDL was the petitioning creditor for the Cayman Proceeding.  Three additional claimants (together referred to as "Black Gold") commenced separate proceedings against, among others, Winczura, CG and CSL before the Cayman Court relating to a damages claim arising from certain investments through CSL.  Black Gold has obtained a judgment of $6 million on a joint and several basis against Winczura and CG.

The proceedings against CSL have been stayed on the assumption that Black Gold will be admitted as a creditor of CSL in the Cayman Proceedings.

70.      *Liquidation Activities and Administrative Functions*. Since their appointment as Joint Provisional Liquidators on December 13, 2023 and their subsequent appointment as Joint Official Liquidators on January 16, 2024, the Petitioners have been in control of the liquidation of the Debtor and have been investigating CSL's business affairs and tracing the flow of funds misappropriated from CSL's client portfolios. There are no active business operations.  The actions taken in the Cayman Islands were not taken for purposes of manipulating the Debtor's COMI to be in the Cayman Islands; rather, these actions were consistent with their obligations under the JPL Order and the Winding Up Order, and they would have taken these actions even in the absence of a chapter 15 case.  *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. at 420 (holding COMI was in the Cayman Islands based on findings that Joint Provisional Liquidators' actions there were "consistent with the Appointment Order and their roles in the Foreign Proceeding and [that] they would have taken these actions even if they had never intended to file a chapter 15 case."). Given the Joint Official Liquidators' broad authority over the Debtor under the Winding Up Order, it is submitted that a finding that the Debtor's COMI is in the Cayman Islands is consistent with the current expectations of third parties. *See In re British Am. Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 723 (Bankr. S.D. Fla. 2010) ("In light of the Petitioner's concerted efforts on behalf of the Debtor, and the extended passage of time since his appointment [of 14 months], third parties must necessarily consider the Petitioner's offices in the British Virgin Islands to be the location of the Debtor's COMI.").

71.      Based upon the foregoing, it is submitted that CSL's COMI is the Cayman Islands. The Cayman Proceeding therefore fully qualifies for recognition as a foreign main proceeding.

C.   **The Petitioners Satisfy the Requirements for "Foreign Representatives" Under Section 101(24) of the Bankruptcy Code**

72.   The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be a person or body.  *See* 11 U.S.C. § 1517(a)(2).

73.   The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

74.   Under section 101(41) of the Bankruptcy Code, the "term 'person' includes [an] individual . . . ." 11 U.S.C. § 101(41).  Here, the Petitioners are individuals.

75.   Pursuant to the Winding Up Order, the Petitioners have been appointed as the Joint Official Liquidators of the Debtor.  The Winding Up Order specifically authorizes Petitioners "*to take such action as may be necessary or desirable to obtain recognition of the JOLs and/or their appointment in Canada and the United States of America and/or in any other relevant jurisdiction, and to make applications to the courts of such jurisdictions for that purpose or for the purpose of obtaining information to assist them in discharging their functions.*"

76.   Thus, Petitioners have met the requirements of section 101(24) of the Bankruptcy Code and are the Debtor's "foreign representatives" as defined thereunder.  *See In re SPhinX, Ltd.*, 351 B.R. 103, 116-17 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) (noting that the foreign representatives had submitted a "copy of the Cayman Court's order appointing them to administer the Debtors' winding up under the Companies Act and authorizing their

commencement of these chapter 15 cases, thereby satisfying Bankruptcy Code sections 101(24) and 1515(b).").

### D.   The Chapter 15 Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code

77.   The third and final requirement of section 1517(a) is that "the petition meets the requirements of section 1515."   11 U.S.C. § 1517(a)(3).   The Petitioners duly and properly commenced this Chapter 15 Case in accordance with sections 1504 and 1509 of the Bankruptcy Code, which require the filing of a petition for recognition under section 1515 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1504, 1509(a). In accordance with section 1515(b)(1) of the Bankruptcy Code, a certified copy of the Winding Up Order commencing the Cayman Proceeding and appointing Petitioners as Joint Official Liquidators with respect thereto has been filed with the Chapter 15 Petition.   *See* Petition, **Exhibit A**.

78.   In accordance with section 1515(c) of the Bankruptcy Code, it is submitted that the Cayman Proceeding is the only known pending "foreign proceeding" with respect to the Debtor, except with respect to the recognition proceeding in Canada in which, upon application of the Joint Official Liquidators, the Canadian Court granted recognition to the Cayman Proceeding.

79.   Accordingly, the requirements of section 1515, and all requirements of section 1517(a), have been satisfied.   Thus, it is respectfully submitted that entry of an order recognizing the Cayman Proceeding as a foreign main proceeding is appropriate.

### III.   The Debtor Is Entitled to Automatic Relief Under Section 1520 of the Bankruptcy Code

80.   Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign main proceeding, including the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy

Code to the Debtor and its property located within the territorial jurisdiction of the United States. *See* 11 U.S.C. § 1520(a).

81.     Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Petitioners respectfully submit that no further showing is required to the extent the Court recognizes the Cayman Proceeding as a foreign main proceeding.

## IV.     **Certain Additional Relief Is Both Necessary and Appropriate to Implement the Cayman Proceeding and Should be Granted**

82.     In addition to recognition of the Cayman Proceeding as a foreign main proceeding, the Petitioners submit that any relief sought in the Chapter 15 Petition that does not flow automatically from section 1520(a), including (a) enforcement of the Default Judgments and the Freezing Order, and (b) the examination of witnesses and production of documents, is consistent with well-established principles of international comity and is authorized under sections 105(a) and 1521 of the Bankruptcy Code (the "Requested Relief").

83.     Chapter 15 of the Bankruptcy Code empowers "courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity." *In re Rede Energia S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014) (*citing In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333-34 (S.D.N.Y. 2008)); *see In re SPhinX, Ltd.*, 351 B.R. at 112 ("chapter 15 maintains – and in some respects enhances – the 'maximum flexibility' . . . that section 304 provided bankruptcy courts in handling ancillary cases in light of principles of international comity and respect for the laws and judgments of other nations.") (internal citations omitted); *see also* 11 U.S.C. § 1501 (stating that the purpose of chapter 15 is to provide mechanisms for cooperation and comity between courts dealing with cross-border insolvency cases). As this Court has explained:

> While recognition of the foreign proceeding turns on the objective criteria under § 1517, relief [post-recognition] is largely discretionary and turns on subjective factors that embody principles of comity. Once a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity.

*In re Sino-Forest Corp.*, 501 B.R. 655, 664 (Bankr. S.D.N.Y. 2013) (internal citations and quotations omitted).

84.    The Supreme Court has held that comity is appropriate in circumstances where:

[T]here has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect."

*Hilton v. Guyot,* 159 U.S. 113, 158, 16 S.Ct. 139, 40 L.Ed. 95 (1985).

85.    Here, the Court should exercise its discretion under the Bankruptcy Code, consistent with the principles of comity, to grant full force and effect to the Freezing Order within the territorial jurisdiction of the United States.[5] *See, e.g.*, *In re Avanti Communs. Grp. PLC*, 582 B.R. at 616 (Bankr. S.D.N.Y. 2018) ("Cases have held that in the exercise of comity that appropriate relief under section 1521 or additional assistance under section 1507 may include recognizing and enforcing a foreign plan confirmation order.").

---

[5] The relief requested herein is also consistent with section 1525(a) of the Bankruptcy Code, which provides that "[c]onsistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee." 11 U.S.C. § 1525(a).

### A.    The Freezing Order Should Be Enforced

86.    Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors[,]" including any relief that may be available to a trustee or debtor-in-possession, subject to certain exceptions that do not apply here.  11 U.S.C. § 1521(a); *In re Daebo Int'l Shipping Co., Ltd*., 543 B.R. 47, 52–53 (Bankr. S.D.N.Y. 2015); *Hosking v. TPG Capital Mgmt. (In re Hellas Telecomms. (Lux.) II SCA),* 535 B.R. 543, 586 (Bankr. S.D.N.Y. 2015) ("a foreign representative may obtain relief available to a trustee under the Bankruptcy Code...."); *see also In re ABC Learning Centres Ltd.,* 728 F.3d at 306 ("Foreign Representatives can access U.S. courts to request enforcement of orders of the foreign proceeding and to stay actions against foreign debtors' property in the United States."); *In re Energy Coal S.P.A.,* 582 B.R. 619, 628 (Bankr. D. Del. 2018) ("Section 1521 contains a non-exhaustive list of types of relief that may be appropriate in a given proceeding.").  The granting of such relief is subject to the requirement that the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

87.    It is submitted that enforcing the Freezing Order within the territorial jurisdiction of the United States, which relief the Court may grant in its discretion, is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code.  If granted, such relief would promote all of the legislatively enumerated objectives of section 1501(a).

88.    As set forth therein, the Freezing Order was entered by the Cayman Court upon application of the Petitioners, and issued after hearing and considering argument and acceptance

31

of undertakings provided by the Petitioners.  While the Freezing Order was initially made at an *ex parte* hearing, it required service upon Respondents of the Freezing Order and related evidence and exhibits and explicitly states that "the Respondents have a right to apply to the Court to vary or discharge the [Freezing] Order."  *See* Freezing Order, p. 2, Schedule 1. Further, the Freezing Order states that a further hearing with respect to the Freezing Order will be held on a future date to be fixed by the Court. *See id.* at p. 2.

89.    The Cayman Court provided its sound reasoning for the Freezing Order in the Mareva Ruling, inclusive of a finding that "the [Petitioners] had clearly established a good arguable case on the merits or at least one of their proposed claims" and that "there was cogent evidence of a risk of dissipation on the part of Winczura and companies she controlled … [T]his risk was demonstrated by reference to the fact that more than $15 million which should have been in the Company's coffers when the Joint Official Liquidators were initially appointed as Joint Provisional Liquidators in December 2023 was missing; however, subsequent to this date, the Joint Official Liquidators as part of their forensic tracing exercise have evidence that the funds were instructed to be paid into an account in the name of CG at CIBC."  *See* **Exhibit D**.

90.    At least three (3) further hearings were held in respect to the Freezing Order, with notice to Respondents.  Counsel for CG and PFS appeared at such hearings.   While Winczura did not formally appear despite the Court finding proper notice thereof, she actually contacted the Cayman Court prior to the July 12, 2024 hearing to, *inter alia*, seek an adjournment of the hearing. After considering the request and relying upon Winczura's previous actions before the court, the Cayman Court denied the email request.   Clearly, the Respondents were on notice of the hearings regarding the Freezing Order, including rights thereunder, and failed to take proper actions.

91.     The Cayman Court has personal jurisdiction over each of the Respondents – Winzcura was a resident of the Cayman Islands, with her primary residence located there; CG and PFS were Cayman Islands registered companies.   As noted above, the Petitioners have now been appointed as the joint provisional liquidators for both CG and PFS, along with the broad powers associated therewith under Cayman Islands law.  In their capacity as joint provisional liquidators of CG and PFS, they consent to the recognition of the Freezing Order in the United States.

92.     The Joint Official Liquidators sought the Freezing Order to protect the Debtors' assets, with their investigation finding that more than $20 million had dissipated from the Debtors by or at the instruction of Winczura.  To this point, the Cayman Court found that at least $15 million was missing from the Debtors, and there was a cogent evidence of dissipation of assets of the company under the control of Winczura.

93.     While initially issued as a pre-judgment freeze of assets under Cayman Islands law, the Cayman Court ultimately entered default judgments against each of the Respondents.  Thus, the Freezing Order remains in place post-judgment against each of these parties, all of whom fall within the jurisdiction of the Cayman Court.   As such, it is submitted that the Freezing Order now incorporates all of the protections, and avoids the pitfalls, outlined by the Court with respect to pre-judgment attachments. *See In re Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333, 119 S. Ct. 1961, 144 LEd.2d 319 (1999)*; In re Nexgenesis Holdings Ltda.*, 2024 WL 3616732 (Bankr. S.D. FL July 31, 2024).

94.     The Cayman Proceeding is undertaken as being in the best interests of the Debtor and its creditors.  Thus, the Petitioners submit that the prospects for an effective liquidation under the Cayman Proceeding fully justifies such discretionary relief of enforcing the Freezing Order, which is critical to the success of same.

95.     To the extent the standards for injunctive relief apply in this Chapter 15 Case to the

Freezing Order, those standards are met.   Permanent injunctive relief generally is appropriate

where a movant can show a likelihood of irreparable harm.   Irreparable harm to an estate exists

where the orderly determination of claims and the fair distribution of assets are disrupted. *See In*

*re Petition of Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("Irreparable harm is present

when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and the fair

distribution of assets in a single, centralized forum.") (*quoting* Collier on Bankruptcy ¶ 304.05, at

304-21 (15th ed. Rev. 2003)); *In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000)

("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their

claims or obtain preferred positions to the detriment of the other creditors."); *In re Rubin*, 160 B.R.

269, 283 (Bankr. S.D.N.Y. 1993) ("[T]here appears to be little dispute regarding the notion that

the premature piecing out of property involved in a foreign liquidation proceeding constitutes

irreparable injury.") (internal citations omitted); *In re Petition of Brierley*, 145 B.R. 151, 168

(Bankr. S.D.N.Y. 1992) ("Harm to the estate exists from the failure to grant injunctive relief in the

form of disruption of an orderly determination of claims and the fair distribution of assets in a

single case." (internal citations and quotation marks omitted)); *In re Gercke*, 122 B.R. 621, 626

(Bankr. D.D.C. 1991) ("Harm to the estate also exists in the form of disruption of an orderly

determination of claims and the fair distribution of assets in a single case ." (internal citations and

quotation marks omitted)); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (same).

96.     Courts across the United States have held that they have the authority to grant

permanent injunctive relief to enforce foreign restructuring plans, schemes, releases, and

discharges. *See Canada Southern Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883) (concluding that

actions brought in the United States by plaintiff bondholders who did not participate in the

Canadian insolvency proceedings of the bond issuer could not be maintained, even though the bonds were payable in New York); *In re Bd. of Directors of Telecom Argentina, S.A.,* 528 F.3d 162 (2d Cir. 2008) (concluding that bankruptcy court did not abuse its discretion in granting full force and effect to Argentine plan and approval order in the United States); *In re Metcalfe & Mansfield Alternative Investments,* 421 B.R. 685 (Bankr. S.D.N.Y. 2010) (recognizing, enforcing and granting permanent injunctive relief in chapter 15 case in respect of foreign plan that included protection for third party releases in Canadian scheme); *In re Ho Seok Lee,* 348 B.R. 799 (Bankr. W.D. Wash 2006) (granting permanent injunctive relief in a chapter 15 case as an "effective mechanism" to prevent creditor from seeking to recover amounts in excess of what was provided under Korean plan of reorganization).

97.     If the Freezing Order is not given effect in the United States, there is significant risk that the Respondents will take action detrimental to the Cayman Proceeding including further dissipation of assets of the Debtor.  *See In re Olinda Star Ltd.*, 614 B.R. 28, 48 (Bankr. S.D.N.Y. 2020) (finding that there is a threat of irreparable harm without an injunction because one or more persons or entities could take action that is inconsistent with or in contravention of the terms of a foreign scheme).  To date, the Petitioners are aware of at least $20 million that has been dissipated from CSL by Winczura or at her direction.  In fact, the Cayman Court in issuing the Freeze Order found that $15 million was missing from the Debtor while Winczura was in control of the company.  Thus, unless this Court enters an order enforcing the Freezing Order, irreparable harm could come to the integrity of the Cayman Proceeding to the detriment of the Debtor and its creditors.

98.     The Requested Relief under section 1521 is founded on the Congressional mandate to cooperate with foreign proceedings and foreign representatives to promote the goals of chapter

15. *See* 11 U.S.C. § 1525(a) ("Consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee."). As shown above, such relief is "appropriate" as that term is used in section 1521 because it is necessary to ensure the success of the Cayman Proceeding. As noted, however, the Court may grant such relief only if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

99.    The Bankruptcy Code does not define "sufficient protection." A determination of sufficient protection "requires a balancing of the respective parties' interests." *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (citing *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012); *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 556–58 (E.D. Va. 2010); *CT Investments Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012)). Section 1522 "gives the bankruptcy court broad latitude to mold relief to meet specific circumstances." *In re Int'l Banking Corp.*, 439 B.R. 614, at 626-27 (Bankr. S.D.N.Y. 2010) (internal quotations and citations omitted); *see also In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009).

100.    As noted above, the Respondents under the Freezing Order had the right to apply to the Cayman Court to "vary or discharge the [Freezing] Order" and attend subsequent hearings on the issue. Since the entry of the Freezing Order, there have been three (3) subsequent hearings to address the Freezing Order. To date, and despite notice thereof, the Respondents have failed to take any action necessary for the Cayman Court to overrule the Freezing Order. Importantly from a comity standpoint, the Cayman Court has now entered default judgments against the Respondents.

101.    Thus, the Petitioners submit that the standards required to "sufficiently protect" creditors and other parties in interest have been met, that grant of the Requested Relief to enforce the Freezing Order would not be manifestly contrary to the public policy of the United States, and that the Requested Relief to enforce these Cayman Court orders can and should therefore be granted.

**B. Examination of Witnesses and Production of Documents are Necessary and Appropriate.**

102.    Section 1521(a)(4) expressly includes in the list of appropriate relief a court may grant, "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." 11 U.S.C. § 1521(a)(4). Courts have held that section 1521(a)(4) allows not only the examination of witnesses but also the production of documents. *See, e.g. In re Pro-Fit Holdings Ltd.,* 391 B.R. 850, 860 (Bankr. C.D. Cal. 2008) (explaining that relief under section 1521(a)(4) "includes the examination of witnesses pursuant to Rule 2004 and the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities"); *in re SPhinX Ltd.,* 351 B.R. at 113 (recognizing that various forms of relief are available to a foreign representative in chapter 15 proceedings, including "the examination of witnesses and the delivery of information"); *see also 8 COLLIER ON BANKRUPTCY* ¶ 1521.02 (6th ed. Rev. 2012) (providing that "[s]ubsection 1521(a)(4) enables discovery.").

103.    Bankruptcy Rule 2004 provides an additional ground for seeking discovery in a chapter 15 proceeding. *See, e.g.*, In re Glitnir banki hf., *Case No. 08-14757 (SMB), 2011 WL 3652764, at *6 (Bankr. S.D.N.Y. Aug. 19, 2011).* The purpose of a Bankruptcy Rule 2004 examination is to aid in discovery of assets, and "any third party who can be shown to have a relationship with the debtor can be made subject to a [Bankruptcy Rule] 2004 investigation." *In re*

*Ionosphere Clubs, Inc.* 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994).  In the context of a chapter 15 case, the scope of an examination under Bankruptcy Rule 2004 is set forth in Bankruptcy Code section 1521(a)(4). *In re Glitnir banki hf.*, Case No. 08-14757 (SMB), 2011 WL 3652764, at *6.

104.    Upon recognition of the Cayman Proceeding as a foreign main proceeding, the Petitioners need the discovery requested, *inter alia*, to obtain the books and records of the Debtor, to locate assets of the Debtor, to analyze transactions involving the Debtor including investments made by the Debtor, and to identify potential causes of action held by the Debtor against various parties in the United States.

105.    Both the issuance of subpoenas compelling the production of documents from, and the attendance at a deposition by, parties related to the Debtor and who may be uniquely situated to have the Debtor's historical records and/or knowledge of estate assets, are consistent with the fundamental policies of the Bankruptcy Code and the Companies Act.

106.    Thus, the Petitioners submit that the grant of the Requested Relief to facilitate the Petitioners' ability to examine witnesses, take evidence and collect information concerning the debtor's assets is appropriate and should be granted.

## NOTICE

107.    In accordance with Bankruptcy Rule 2002(q), the Petitioners will provide notice of this Motion to (i) the Debtor; (ii) the Office of the United States Trustee for Region 2; and (iii) the parties entitled to notice as set forth in the *Ex Parte Application Pursuant to Fed. R. Bankr. 2002 and 9007 for Order (I) Specifying Form and Manner of Service of Notice of Chapter 15 Petition; (II) Scheduling Recognition Hearing, and (III) Setting Deadlines for Objections and Replies*, filed

contemporaneously herewith. The Petitioners submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## **NO PRIOR REQUEST**

108.    No prior request for the relief sought in this Motion has been made to this or to any other court.

## **CONCLUSION**

For all the foregoing reasons, Petitioners respectfully request that the Court enter an order (a) for recognition by this Court as the Debtor's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code; (b) for recognition of the Cayman Proceeding as a "foreign main proceeding" pursuant to Sections 1515, 1517, and 1520 of the Bankruptcy Code; (c) for additional relief under Section 1521 upon recognition enforcing the Freezing Order and allowing the Petitioners to examine witnesses, take evidence or collect information concerning the Debtor's assets and affairs in the United States, all as necessary to protect the Debtor's assets and the interests of creditors; and (d) such other and further relief as the Court deems just and proper.

Dated: October 21, 2024                    Respectfully submitted,

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS LLP**

By: /s/*John E. Jureller, Jr.*
        John E. Jureller, Jr.
        Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Attorneys for the Petitioners*

## <u>VERIFICATION OF PETITIONERS' DECLARATION</u>

Pursuant to 28 U.S.C. § 1746, I, Karen Scott, declare as follows:

I am one of the Joint Official Liquidators of CSL in the Cayman Proceeding. I am authorized to file this Declaration and Motion and to commence and act in this Chapter 15 Case.

I declare under penalty of perjury that the factual contents of the foregoing Declaration and Motion are true and accurate to the best of my knowledge, information, and belief. Unless otherwise indicated, all facts set forth in the Declaration and Motion are based upon: (a) my review of relevant information (including oral information), data and documents (including books and records and the documents cited in the Declaration and Motion) furnished to me by third parties; (b) my analyses of the information I have received on the Debtor, its history, and its financial condition; (c) my active participation in the Cayman Proceeding and discussions with the Debtor's stakeholders, and (c) where cited, the Harris Declaration.

I am an individual over the age of 18. If I am called to testify, I will do so competently and based on the facts set forth herein.

Dated: October 21, 2024

Respectfully submitted,


*/s/Karen Scott*
Karen Scott