UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| CANTERBURY SECURITIES, LTD.,[1] | )  Chapter 15 |
| | ) |
| | )  Case No. |
| Debtor in a Foreign Proceeding. | ) |

# DECLARATION OF JOHN HARRIS IN SUPPORT OF DEBTOR'S CHAPTER 15 PETITION FOR ENTRY OF ORDER RECOGNIZING FOREIGN MAIN PROCEEDING AND GRANTING ADDITIONAL RELIEF

1. I am a partner at the Cayman Islands law firm, Nelsons Attorneys at Law Ltd ("**Nelsons**"),[2] located at The Grand Pavilion, 802 West Bay Road, Bougainvillea Way, PO Box 30069, Grand Cayman KY1-1201, Cayman Islands. Nelsons is Cayman Islands counsel to Canterbury Securities, Ltd., the above-captioned debtor ("**CSL**" and/or the "**Debtor**") in an insolvency proceeding (the "**Cayman Proceeding**") before the Grand Court of Cayman Islands, Financial Services Division (the "**Cayman Court**"). True and correct copies of the documents evidencing commencement of the Cayman Proceedings are attached as Exhibit A to the Official Form B 401 *Chapter 15 Petition for Recognition of a Foreign Main Proceeding* (the "**Petition**").

2. Karen Scott and Russell Homer of Chris Johnson Associates Ltd. (the "**JOLs**"), in their capacity as Joint Official Liquidators of CSL, engaged Nelsons as counsel to advise on issues of Cayman Islands law arising in connection with the Cayman Proceeding. I am the attorney in charge at Nelsons for the JOLs.

---

[1] The Debtor in this chapter 15 case, along with the last four digits of the Debtor's Cayman Island Registration Number, is: Canterbury Securities, Ltd. (in Official Liquidation) (5657). The location of the Debtor's service address for the purpose of this chapter 15 case is c/o Chris Johnson Associates Ltd., 80 Shedden Road, PO Box 2499, George Town, Grand Cayman KY1-1104, Cayman Islands.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Verified Petition.

3.      I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration (this "**Declaration**"). I make this Declaration in support of (i) the Petition, (ii) *Petitioner's Declaration and Motion for Recognition of a Foreign Main Proceeding and Related Relief* (the "**Motion**"); and (iii) the *Ex Parte Application Pursuant to Fed. R. of Bankr. P. 2002 and 9007 Requesting Entry of an Order (I) Specifying Form and Manner of Service of Notice of Chapter 15 Petition, (II) Scheduling Recognition Hearing, and (II) Setting Deadlines for Objections and Replies* (the "**Scheduling Application**"). In preparing this declaration, I have reviewed the documents submitted in this chapter 15 case, specifically the Petition, the Motion and Scheduling Application.

4.      The facts and matters contained in this Declaration are true and correct to the best of my information, knowledge and belief. To the extent that statements in this declaration are of my own legal opinion, they represent my views and understanding of the laws of the Cayman Islands as a practicing Cayman Islands attorney.

5.      Although I am not a U.S. attorney and therefore do not purport to make any authoritative statements concerning matters of U.S. law, I am fairly well acquainted with chapter 15 of the United States Bankruptcy Code.

**Professional Background and Qualifications**

6.      I am a Partner at Nelsons and I practice in the Cayman Islands. I was first admitted to practice law in the Cayman Islands in 2010 and have practiced Cayman Islands law in the Cayman Islands for over fourteen years.

7.      I was admitted as a solicitor of the Supreme Court of England and Wales in 1996 and as an attorney in the Cayman Islands in 2010. My offshore litigation practice is focused on insolvency, although I also undertake general commercial litigation, financial services, shareholder and trust disputes, and cross-border litigation.

2

8. Nelsons was established in 2020 (when it acquired the existing practice of Nelson & Co, which had been in existence for about 30 years)_ and undertakes a wide range of legal services for domestic and international clients. The firm has a respected international commercial litigation practice with extensive experience in cross-border litigation in trusts, corporate disputes, insolvency and asset recovery, enforcement of foreign judgments and conflicts of law. The firm provides legal advice based upon an in-depth knowledge of the legal, regulatory, and commercial environment in the Cayman Islands.

## RELEVANT SOURCES OF CAYMAN ISLANDS LAW

9. The Cayman Islands is a British Overseas Territory and, as such, its laws are derived from: (a) original local statutes enacted by the local general legislative assembly; (b) English common law brought to the Cayman Islands by early settlers, as adapted to local circumstances and subsequently developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

10. Where no specific local statutory provision applies, the courts of the Cayman Islands will apply English common law as adapted to the circumstances of the Cayman Islands. On questions governed by the common law, the doctrine of judicial precedent applies. The court of first instance is the Cayman Islands Grand Court, which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong.[3] There is a right of appeal

---

[3] Re Bank of Credit & Commerce International, CILR 56 [1994-95].

from the Grand Court to the Cayman Islands Court of Appeal. The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the "**Privy Council**") which sits in London and which is comprised of members of the UK Supreme Court (the highest court in the United Kingdom and formerly known as the Judicial Committee of the House of Lords). The Cayman Islands Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

11. There is an increasing body of jurisprudence in the Cayman Islands developed mainly over the last 40 years and reported in the Cayman Islands Law Reports. Notwithstanding that, it still regularly transpires that there is no local Cayman Islands authority on a particular issue. Where there is no Cayman Islands authority on a particular issue, the Cayman Islands courts will look to and apply decisions of the English courts and, less frequently, decisions of the courts of other Commonwealth jurisdictions. Decisions of the English Court of Appeal and UK Supreme Court are regarded as highly persuasive. So too are decisions of the Privy Council on appeals originating from other Overseas Territories and Commonwealth jurisdictions. The decisions of the highest courts of the other developed Commonwealth jurisdictions such as Australia, New Zealand, Canada, and Hong Kong might have persuasive effect on the decisions of the Cayman Islands Grand Court, depending on their subject matter.

12. The key insolvency procedures of the Cayman Islands Companies Act (2023 Revision) (the "**Companies Act**") include liquidations or 'winding ups' (including voluntary liquidations, compulsory liquidation and provisional liquidation), schemes of arrangement, and receiverships. The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Act, which is supplemented by the Companies Winding Up Rules, (2023 Consolidation) ("**CWR**"), the Insolvency Practitioners' Regulations, (2023

Consolidation) ("**IPR**"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2018, and the Grand Court Rules 1995 (as revised). Part V of the Companies Act is an insolvency law relating to insolvency or adjustment of debt. Provisions of Part V of the Companies Act apply to companies formed and registered under the Companies Act or its predecessors, including companies that are formed as exempted companies.

13. True and correct copies of the Companies Act and IPR are collectively attached hereto as **Exhibit A**.

## CSL'S CORPORATE STATUS

14. CSL is a Cayman Islands entity that was incorporated as an exempted limited company on 16 January 2015, with the purpose to undertake Investment/Asset Management. Its registered office before the Winding-Up Order was at WB Corporate Servies (Cayman) Ltd., 71 Fort Street, George Town, Grand Cayman, KY1-1111, Cayman Islands. A copy of CSL's Certificate of Incorporation is attached hereto as **Exhibit B**.

15. CSL registered with the Cayman Island Monetary Authority ("**CIMA**") as a Securities-Registered Person on 1 January 2020 to conduct securities investment business for high net worth and/or sophisticated persons. Filings for CSL obtained through CIMA show that prior to the requirement to be a Registered Person, CSL was registered with CIMA as an Excluded Person. CIMA currently designates CSL as ACTIVE.

16. CSL was established as a Cayman Islands exempted entity. An exempted entity is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside of the Cayman Islands. Specifically, any proposed company applying for registration as an exempted limited company under the Companies Act must show that its objectives are to be carried out mainly outside of the Cayman Islands. However, in order to further those objectives outside of the Cayman Islands, it may effect and conclude contracts and exercise

5

all of its powers necessary for the carrying on of its business within the Cayman Islands. In other words, it can employ staff or agents in the Cayman Islands and hold offices in the Cayman Islands.

17. Although, upon its inception, CSL was restricted from carrying on business within the Cayman Islands, that did not mean that CSL had no presence at all there. For example, as pointed out previously, the registered office of CSL has been situated in the Cayman Islands since its inception and continues to be so situated. Under private international law, shares are deemed to be situated in the country where they can be effectively dealt with between the shareholder and that company. *See 160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256. Since the register of members and register of partners is maintained at their respective registered offices in the Cayman Islands, any issues relating to the title of those shares and partnership interests will be governed by the laws of the Cayman Islands.

## THE JOLS' APPOINTMENT

18. The Cayman Proceeding stems from a judgment entered against CSL by Fortunate Drift Ltd. ("**FDL**").

19. CSL is owned by Canterbury Group ("**CG**"), which in turn is owned by Erin Winczura ("**Winczura**"). The directors of CSL are Winczura and a US resident Eric Miller.

20. In 2018 CSL entered into an agreement with FDL, a BVI company, whereby CSL would hold certain shares for FDL. These shares were subsequently the subject of a Stock Purchase Agreement ("SPA") with a company called PFS Ltd, a Cayman incorporated company. Unbeknown to FDL, PFS was also owned and controlled by Winczura.

21. On 6 and 7 December 2018, CSL sold a part of the shares for $19,959,397.18, without FDL's consent, and appropriated the proceeds. FDL sued in Cayman and eventually (in late 2023) obtained judgment for about USD 20 million.

22. During the course of the FDL litigation, in September 2023, the Court made freezing and information orders against CSL and Winczura which were not complied with. Winczura produced evidence to the effect that CSL had assets in Canada with Canaccord (a T Bill) and Canadian Escrow (unspecified) that were sufficient to satisfy FDL's claim. The T Bill and Canadian Escrow turned out to be forged documents and did not exist.

23. Upon application of FDL by Summons dated 1 December 2023, an Order for Joint Provisional Liquidators dated 13 December 2023 was entered by the Honorable Justice Ian Kawaley of the Cayman Court under FSD 364 of 2023 (IKJ), placing CSL into provisional liquidation and appointing the JOLs as the Joint Provisional Liquidators.

24. After providing a report on their initial findings to the Cayman Court, on 16 January 2024, the petition was heard by the Cayman Court for a winding up order. The Cayman Court entered an order in accordance with Cayman law to appoint the JOLs as joint official liquidators of CSL (the "**Winding Up Oder**").

## THE CAYMAN ISLANDS PROCEEDING

23. The Cayman Proceedings is a judicial liquidation proceeding in which the assets and affairs of CSL are subject to the control and supervision of the Cayman Court. Pursuant to Section 97(1) of the Companies Act, once an order has been made for the winding up of a company, no suit, action or other proceeding shall be proceeded with or commenced against that company, except with leave of the Cayman Court and subject to such terms as the Cayman Court may impose.

24. Unless otherwise contrary to the Winding Up Order, Schedule 3, Part I to the Companies sets out the powers that the JOLs may exercise with the sanction of the Cayman Court. They are:

    a. *Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.*

7

    b.    *Power to carry on the business of the company so far as may be necessary for its beneficial winding up.*

    c.    *Power to dispose of any property of the company to a person who is or was related to the company.*

    d.    *Power to pay any class of creditors in full.*

    e.    *Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.*

    f.    *Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.*

    g.    *Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.*

    h.    *The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.*

    i.    *The power to raise or borrow money and grant securities therefor over the property of the company, the power to engage staff (whether or not as employees of the company) to assist him in the performance of his functions.*

    j.    *The power to engage attorneys and other professionally qualified persons to assist him in the performance of his functions.*

25.    Schedule 3, Part II of the Companies Act further provides that the JOLs are permitted to exercise the following powers without the Grand Court's sanction:

    a.    *The power to take possession of collect and enter the property of the company and for that purpose to take all such proceedings as he considers necessary.*

    b.    *The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.*

8

    *c.*    *The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.*

    *d.*    *The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.*

    *e.*    *The power to promote a scheme of arrangement pursuant to section 86.*

    *f.*    *The power to convene meetings of creditors and contributories.*

    *g.*    *The power to do all other things incidental to the exercise of his powers.*

26. According to the Winding Up Order, the JOLs can exercise a broad range of powers without further sanction of the Cayman Court, including, amongst other powers, to:

- to bring or defend any action or other legal proceedings in the name and on behalf of the Company other than the Petition;

- to carry on the business of the Company so far as may be necessary for its beneficial winding up;

- to sell any of the Company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels;

- engage staff (whether or not as employees of the Debtor) to assist the JOLs in the performance of their functions;

- engage attorneys and other professionally qualified persons to assist the JOLs in the performance of their functions;

- to take such actions as may be necessary or desirable to obtain recognition of the JOLs and/or their appointment in Canada and the United States of America and/or in any other relevant jurisdiction, and to make applications to the courts of such jurisdictions for that purpose or for the purpose of obtaining information to assist them in discharging their functions; and

- to do all such things as may be necessary or expedient to freeze or preserve property held by any person or entity, whether a related party or otherwise, against which the Company has a claim and where there is a risk of dissipation in such

9

jurisdictions as may be appropriate including, without limitation, in the Cayman Islands, Canada and the United States of America.

27. Since their appointment on 16 January 2024, the JOLs have taken numerous steps to wind up CSL and carry out their duties regarding the Cayman Insolvency Proceeding.

28. Since the making of the Winding Up Order, the JOLs' conduct is subject to the supervision of the Cayman Court. The JOLs are qualified to act as insolvency practitioners and officers of the Cayman Islands courts, with their actions subject to review and reversal by those courts. The JOLs are required to be independent of the management of the corporation and its stakeholders and are required to behave in an even-handed fashion among creditors, investors, or groups of creditors and investors. In their dealings, as officers of the Cayman Islands courts, they are required to act fairly and could be required to forego strict legal rights if they are incompatible with moral justice and honest dealings. The JOLs are required to file periodic reports and apply for approval of their fees to the Cayman Court.

29. Given that the JOLS have been given control of CSL (subject to the control and supervision of the Cayman Court), the restrictions on an exempted entity's activities within the Cayman Islands are of no practical effect or significance during the liquidation.

30. Section 110(1)(a) of the Companies Act states that "it is the function of an official liquidator to collect, realize and distribute the assets of the company to its creditors and, if there is a surplus, to the person entitled to it . . . ." Because the Cayman Court ordered the court-supervised liquidation of CSL, its estate is required to be distributed in accordance with the statutory regime under the supervision of the Cayman Court.[4]

---

[4] There are no provisions in Cayman Islands insolvency law creating any special prejudice or inconvenience for the processing of claims held by entities in the United States in a Cayman Islands winding-up. In addition, pursuant to the CWR, creditors of the insolvent company may assert their claims by mail and are not required to appear before the Cayman Islands Grand Court or the liquidator.

31. Out of the assets that fall into the liquidation estate, the JOLs are bound to pay creditors in the following order of priority after taking into account the expenses of the liquidation:

- secured creditors in respect of any asset sold on behalf of the secured creditor subject to a fixed charge;

- preferential debts pursuant to section 141 of the Companies Act;

- secured creditors whose security is subject to a floating charge; and

- all other unsecured creditors on a *pari passu* basis subject to any other legal requirements or agreements otherwise which bind the company, pursuant to Section 140 of the Companies Act.

32. As a matter of general principle, under Cayman Islands law, assets over which a valid, fixed security has been granted fall outside the liquidation estate.

35. The Cayman Proceeding provides a centralized process to assert and resolve claims against CSL and to make distributions to CSL's creditors. Relief and recognition are requested to protect CSL's assets and maintain, as well as maximize, the value of CSL's estate.

36. Upon application of the JOLs, on 26 April 2024, the Cayman Court entered its *Injunction Prohibiting Disposal of Assets* (the "Freezing Order") against each of (i) Winczura, (ii) PFS and (iii) CG (collectively as related to the Freezing Order, the "Respondents") enjoining Respondents from disposing of and requiring Respondents to provide information concerning assets of the Debtor in the United States.

37. To date, the Respondents have failed and refused to comply with the Freezing Order. Additionally, during their tenure, the JOLs have requested various documents from a variety of parties. Although some documents have been produced, significant critical documents have not yet been turned over.

38. For the JOLs to effectively finalize CSL's liquidation, the JOLs require access to the Debtors' books and records and relevant parties, including in the United States. The Cayman

Proceeding and the relief requested herein will protect CSL's assets and provide the JOLs with access to information necessary to assemble CSL's assets.

38. Thus, the JOLs now seek recognition of the Cayman Proceeding as a foreign main proceeding and related relief to garner and administer CSL's assets and information that may be located and held in the United States, including by enforcement of the Freezing Order in the United States.

39. The JOLs also seek additional relief allowing them to examine witnesses, take evidence and obtain information concerning the debtor's assets, affairs, rights, obligations or liabilities of the Debtor and otherwise conduct discovery in order to ensure the identification of all of CSL's assets to allow for the efficient administration of those assets within the territorial jurisdiction of the United States.

*[Signature on the following page]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 11th day of October, 2024.

Grand Cayman, Cayman Islands

/s/ John Harris
John Harris
Nelsons Attorneys at Law Ltd
802 West Bay Road
Grand Cayman
KY1-1201
Cayman Islands